UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

KENDELL SHULER,

                          Plaintiff,

            -against-                                    **REPORT AND**
                                                         **RECOMMENDATION**
  LIBERTY CONSULTING SERVICES,                           20 CV 5779 (KAM) (CLP)
  LTD.,


                          Defendant.
--------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

        On November 30, 2020, plaintiff Kendell Shuler commenced this action against

defendant Liberty Consulting Services, Ltd. ("Liberty" or "defendant"), alleging that defendant

failed to pay him proper overtime wages, in violation of the Fair Labor Standards Act ("FLSA"),

29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL") Section 650, and failed to

provide him with proper wage notices and wage statements, in violation of Article 6 of the

NYLL, §§ 191, 193.  (Compl.[1]).

        By letter dated May 12, 2021, plaintiff's counsel, Abdul Karim Hassan, Esq., notified the

Court that defendant entered into a settlement agreement ("the Agreement") with plaintiff, but

without the knowledge or involvement of plaintiff's counsel.  (Pl.'s 5/12/21 Ltr.[2] at 1).  By letter

dated June 14, 2021, counsel further notified the Court that his client sent him a letter stating that

the parties had supplemented the agreement ("the Settlement Letter").  (Pl.'s 6/14/21 Ltr.[3] at 2-

3).  For the reasons set forth below, it is respectfully recommended that the alleged Agreement

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed Nov. 30, 2020, ECF No. 1.
[2] Citations to "Pl.'s 5/12/21 Ltr." refer to plaintiff's status report letter, filed May 12, 2021, ECF
No. 11.
[3] Citations to "Pl.'s 6/14/21 Ltr." refer to plaintiff's reply, filed June 14, 2021, ECF No. 17.

and the supplemental Settlement Letter be declared unenforceable and void.  This Court further respectfully recommends that sanctions be imposed against defendants' counsel in the form of plaintiff's attorney's fees expended on this motion.

BACKGROUND

The Complaint in this action was filed on November 30, 2020.  (See Compl.).  Despite proper service, defendant failed to answer, and this Court Ordered plaintiff to provide a status report as to how he wished to proceed with the action.  (See Electronic Order, dated Jan. 6, 2021).  On February 8, 2021, plaintiff requested an extension to file the status report, stating that "it appears that the Defendant has had some communications with Plaintiff concerning resolution" of the action and noting that counsel was concerned that the parties had come to a settlement in contravention of Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  (ECF No. 7).  The Court granted the request on February 9, 2021.  (See Electronic Order, dated Feb. 9, 2021).

**A.  The Agreement and Supplement Letter**

After seeking several more extensions, plaintiff's counsel filed the May 12, 2021 letter, attaching the Agreement, which provides for a $4,000 payment to plaintiff, and alleging that the parties had impermissibly reached the Agreement in his absence.  (See Sett. Agr.[4]).  Plaintiff's counsel notes that the Agreement appears to have been drafted by an attorney.  (Pl.'s 5/12/21 Ltr. at 1).  However, he states that no one at his firm was involved in negotiating or drafting the Agreement and no attorney from counsel's firm "sought or received any monies under the purported settlement," although the Agreement does contain a provision for $1,000 to be paid to counsel.  (See Pl.'s 5/12/21 Ltr. at 1; Sett. Agr. ¶ 2).

---

[4] Citations to "Sett. Agr." refer to the Exhibit attached to plaintiff's 5/12/21 Letter, filed May 12, 2021, ECF No. 11-1.

On May 14, 2021, this Court issued an Order requiring defense counsel to enter a notice of appearance and respond to plaintiff's letter by May 20, 2021.  (See ECF No. 12).  The Court also set a hearing for June 17, 2021, noting that it was concerned about the "possible violation of Cheeks.  (Id.)

On May 20, 2021, Gary Rosen, Esq., counsel for defendant, responded to plaintiff's counsel's letter, stating that, while defendant was served by service upon the Secretary of State on December 8, 2020, defendant "did not receive the service of the complaint until approximately December 15, 2020."  (Def.'s 5/20/21 Ltr.[5] at 1).  According to counsel, on December 4, 2020, plaintiff "allegedly told Defendant's manager that Plaintiff was due money and that he had a lawyer."  (Id.)  At this point, counsel emailed Mr. Hassan requesting that they discuss "this case."  (Id.)  On December 7, 2020, Mr. Rosen attempted to contact Mr. Hassan again, attaching the Agreement and requesting that Mr. Hassan obtain plaintiff's signature, but Mr. Hassan did not respond.  (Id.)  The very next day, December 8, 2020, defendant provided Mr. Rosen with the Agreement, signed by plaintiff, who subsequently sent the signed Agreement to Mr. Hassan.  (Id. at 2).  Defendant's counsel represents in his letter that on December 8, 2020, before defendant was served with the Complaint, the parties "resolved their dispute of pay allegedly due to Plaintiff."  (Id.)  According to Mr. Rosen, plaintiff was paid on December 8, 2020 pursuant to the Agreement.  (Id.; see Ex. 4 (attaching copy of check addressed to plaintiff)).

On June 14, 2021, plaintiff's counsel responded to defense counsel's letter arguing that "the defense is trying to create the erroneous impression" that defendant and counsel were not aware of the pending civil case before entering into the Agreement.  (Pl.'s 6/14/21 Ltr. at 1).  Counsel states that he mailed a copy of the Complaint to defendant on December 3, 2020 and

---

[5] Citations to "Def.'s 5/20/21 Ltr." refer to defendant's response to plaintiff's 5/12/21 letter, filed May 20, 2021, ECF No. 15.

cites Mr. Rosen's December 4, 2020 email requesting to discuss "this case," as evidence that both defendant and Mr. Rosen were aware of this pending case before December 8, 2020 when the parties signed the Agreement.  (Id.)  Mr. Hassan reiterates his position that the Agreement was reached in violation of Cheeks, and he asserts that Mr. Rosen's conduct violates the ethical rules restricting communications between lawyers and represented parties.  (Id. at 2 (citing 22 N.Y.C.R.R. § 1200.4)).  Lastly, Mr. Hassan asserts that he received plaintiff's Settlement Letter on June 7, 2021, stating that the parties had supplemented the Agreement in which plaintiff received a raise and $12,200.  (Id.)  In the Settlement Letter, plaintiff notified his attorney that plaintiff did "not wish to pursue any legal action against" defendant, particularly because plaintiff did not want to risk "jeopardize[ing] [his] employment" with defendant.  (Id. at 2-3; Pl.'s Sett. Ltr.[6]).

### B.  The June 17, 2021 Hearing

On June 17, 2021, this Court held a hearing during which counsel for both parties reiterated their positions on the issue.  (See Tr.[7]).  Mr. Rosen argued that "because this case was settled before a complaint was served . . . Cheeks did not apply."  (Id. at 10).  Mr. Hassan opposed that argument, asserting that "if you're aware of a lawsuit, a lawsuit is pending in court, that's what triggers Cheeks."  (Id. at 14).  At the hearing, the Court set a further briefing schedule, requiring the parties to submit "affidavits from your clients as to what happened . . . documents showing timing . . . [and] case authority for your respective positions as to when you believe Cheeks" begins to apply.  (Id. at 21).

---

[6] Citations to "Pl.'s Sett. Ltr." refer to the Exhibit attached to plaintiff's 6/14/21 Letter, filed June 14, 2021, ECF No. 17-1.

[7] Citations to "Tr." refer to the transcript of the June 17, 2021 hearing, filed Feb. 28, 2022, ECF No. 23).

### C.  Post-Hearing Briefing

On July 6, 2021, Mr. Hassan filed a letter, arguing that "it is the filing and subsequent settlement/dismissal of an FLSA action that triggers <u>Cheeks</u> review," not formal service.  (Pl.'s 7/6/21 Ltr.[8] at 2).  Mr. Hassan also noted that, even where both parties "declined and opposed court review and approval," the Second Circuit held in <u>Cheeks</u> that a court is required to approve of the settlement.  (<u>Id.</u> at 3).  As to whether the various Agreements should be approved pursuant to <u>Cheeks</u>, plaintiff's counsel states that there are two[9] "agreements:"  the Agreement, dated December 7, 2020 and signed on December 8, 2020, and plaintiff's Settlement Letter, dated June 4, 2021.  (<u>Id.</u>)  Counsel notes that the Agreement provides for a $4,000 payment, while the Settlement Letter provides for a $12,200 payment and an unspecified pay raise for plaintiff.  (<u>Id.</u> at 3-4).  According to Mr. Hassan, "the original amount of $4,000 would clearly be inadequate for approval under <u>Cheeks</u>."  (<u>Id.</u> at 4).  He suggests, however, that the second amount may be closer to an appropriate settlement amount, but notes that it is difficult to determine since plaintiff's Letter does not specify what the amount of the raise was to be, nor is there evidence that plaintiff was ever paid the $12,200.  (<u>Id.</u> at 4).

Mr. Hassan further contends that the Agreement contains an "improper general release [and] an improper non-disparagement provision," which likely would not meet court approval under <u>Cheeks.</u>  (<u>Id.</u>)  Moreover, the fact that the Agreement and the terms of plaintiff's Letter

---

[8] Citations to "Pl.'s 7/6/21 Ltr." refer to plaintiff's letter containing supplemental briefing, filed July 6, 2021, ECF No. 19.

[9] Counsel suggests that there are actually three settlement "documents," including a letter sent by plaintiff to defendant on December 6, 2020.  (Pl.'s 7/6/21 Ltr. at 3).  This letter requests that defendants pay plaintiff "a one-time lump sum of $4000, and a vehicle upon my continuation of employment," as well as "a raise of $180-$200."  (<u>Id.</u>, Ex. 1).  In the alternative to receiving the raise, plaintiff requests that he be allowed to "work off the books."  (<u>Id.</u>)  It is unclear whether defendant received this letter, and there is no mention of this letter in defendant's briefing.  Since there is nothing to indicate the parties either met or discussed this settlement demand, this Court has not considered it as a separate settlement agreement.

were not reached through "arm's-length bargaining between experienced counsel" indicates that they should not be approved and enforced, particularly because defendant "had the benefit of legal counsel" while plaintiff did not. (Id. at 6 (citing Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012))). Counsel argues that in comparing certain documents, he has become concerned that there is "the possibility of fraud or collusion" because there are "significant and material differences between what Plaintiff believed he was agreeing to and what the defense had him sign." (Id. at 9). Mr. Hassan further cites to the provision contained in the Agreement which states that plaintiff has "consulted with an attorney before signing below," but reiterates that he never spoke with his client regarding either the Agreement or the terms contained in the Settlement Letter. (Id.; Hassan Decl.[10] ¶¶ 10-13, 16, 17, 26). He also notes that, as of June 17, 2021, plaintiff was still working for defendant and was in "a difficult position of not wanting to anger the Defendant and jeopardize his job." (Id. ¶ 27).

In response, Mr. Rosen submitted an affidavit on July 20, 2021, stating that Mr. Hassan "opted not to follow what his client wanted . . . [and] continue[d] this case for no apparent reason." (Rosen Decl.[11] ¶ 4). Counsel analogizes the settlement in this case to that of an Offer of Judgment pursuant to Federal Rule of Civil Procedure 68, which has been held to not need a Cheeks hearing and he cites to other cases where Mr. Hassan negotiated a Rule 68 Offer of Judgment. (Id. ¶¶ 7, 9-10). He further states that plaintiff and defendant have worked together for the past seven months and there were "no issues between the parties." (Id. ¶ 17). Finally, Mr. Rosen argues that, had Mr. Hassan responded to his emails, plaintiff could have filed a "notice of voluntary dismissal . . . without prejudice," which would not require Cheeks review.

---

[10] Citations to "Hassan Decl." refer to the Declaration of Abdul K. Hassan, Esq., in support of plaintiff's 7/6/21 Ltr., filed July 6, 2021, ECF No. 19-1.
[11] Citations to "Rosen Decl." refer to the Declaration of Gary Rosen, Esq., filed July 20, 2021, ECF No. 20.

(Id. ¶¶ 16, 21 (citing Mei Xing Yu v. Hasaki Restaurant, Inc., 944 F.3d 395, 411 (2d Cir. 2019))).

Mr. Hassan, in a reply letter dated July 30, 2021, challenges Mr. Rosen's assertion that the Agreement was without prejudice, pointing to the stipulation attached to the Agreement, which states that dismissal was "with prejudice." (Pl.'s 7/30/21 Reply[12] at 2). Mr. Hassan also notes that, even if the dismissal was without prejudice, the Court should "examine the conduct of the Defendant to determine if any change in decision" by plaintiff was the result of influence or pressure by defendant and should confirm that plaintiff understands what rights he would forfeit by signing the Agreement. (Id. at 3). Counsel reiterates that Cheeks review is conducted regardless of the wishes of the parties and also argues that his client's "wishes" may have been influenced by defendant and by plaintiff's desire to keep his job. (Id. at 4-5). Citing Saravia v. Royal Guard Fence Co., No. 19 CV 2086, 2020 WL 5231696 (E.D.N.Y. Sept. 2, 2020), in which a defendant later admitted to writing a letter terminating Mr. Hassan on behalf of the plaintiff, counsel states that plaintiff's Settlement Letter also appears to be written by counsel rather than plaintiff, although it does not appear to be a formal settlement agreement. (Id. at 6). Counsel also contends that cases regarding Rule 68 Offers of Judgment are irrelevant here, as the Agreement was accompanied by a stipulation of dismissal. (Id. at 7).

Mr. Hassan repeats his argument that sanctions are necessary in this case. (Id. at 3-4).

DISCUSSION

The Court must first determine whether the Agreement is subject to Cheeks review or should be considered a Rule 68 Offer of Judgment as defendant's counsel argues. If Cheeks is applicable, then the question is whether the purported settlement is enforceable. Finally, the

---

[12] Citations to "Pl.'s 7/30/21 Reply" refer to plaintiff's reply, filed July 30, 2021, ECF No. 22.

Court will consider whether sanctions are necessary in this case.

**A. Application of Federal Rule of Civil Procedure 68**

Defendant's counsel argues that this case should be considered analogous to an Offer of Judgment pursuant to Rule 68, for which Cheeks review is not required. (Rosen Decl. ¶¶ 7, 9-10). Although Offers of Judgment are not subject to court approval, see Pest v. Express Contracting Corp. of Great Neck, 219 F. Supp. 3d 360, 361 (E.D.N.Y. 2016), the Rule has separate requirements, none of which were complied with in this case. First, the Rule 68 offer must be served on the opposing party, who may, within 14 days of service, serve written notice accepting the offer. Fed. R. Civ. P. 68(a). Then, if the offer is accepted, "either party may then file the offer and notice of acceptance, plus proof of service." Id. As noted by the Second Circuit, "Rule 68(a) judgments are not at all like those private settlements [that are subject to Cheeks review]; they are publicly-filed, stipulated judgments." Mei Xing Yu v. Hasaki Rest., Inc., 944 F.3d 395, 406 (2d Cir. 2019).

Here, there is no evidence that a Rule 68 offer was ever served on plaintiff, nor that plaintiff was given the 14-day period to consider the offer. Moreover, there is no evidence that plaintiff served a written notice of acceptance. While defendant's counsel may argue that the Agreement constitutes the final notice of acceptance, he has proffered no evidence of the offer, nor proof of service, on plaintiff. Further, it is clear that defendant had no intention of filing the Agreement on the docket; indeed, Mr. Hassan had to bring the alleged Agreement to the attention of the Court, more than five months after the Agreement was signed by plaintiff. (Compare Pl.'s 5/12/21 Ltr. with Sett. Agr. (dated Dec. 8, 2020)). Lastly, the stipulation of dismissal attached to the Agreement is "with prejudice" (see ECF No. 11-1), which clearly falls within the ambit of Cheeks review. See Cheeks v. Freeport Pancake House, Inc., 796 F.3d at

200 (holding that "parties cannot settle their FLSA claims through a private stipulated dismissal with prejudice"). Thus, Rule 68 is inapplicable to this case.

## B. Timing of <u>Cheeks</u>

It is well established that <u>Cheeks</u> applies to dismissals pursuant to Federal Rule of Civil Procedure 41, which "*a fortiori*, cannot occur unless and until an action is commenced in court." <u>Gaughan v. Rubenstein</u>, 261 F. Supp. 3d 390, 400 (S.D.N.Y. 2017). Here, defendant's counsel attached a stipulation of dismissal with prejudice to the Agreement signed by the parties, demonstrating counsel's understanding that a lawsuit had been commenced. Nevertheless, defendant's counsel now argues that, because the Agreement was reached before defendant received formal service of the Complaint, <u>Cheeks</u> does not apply. (Tr. at 10). Although defendant disputes that service of the Complaint was effected before the Agreement was signed, the fact that the Agreement included a stipulation of dismissal pursuant to Rule 41 indicates that the parties contemplated dismissal of an action. (<u>See</u> ECF No. 11-1).

Defendant has failed to provide any authority for his assertion that until the Complaint has been formally served, the <u>Cheeks</u> requirement of court approval for any FLSA settlement does not apply. Indeed, courts, including this one, have conducted <u>Cheeks</u> review even where the parties "agreed to the terms of the settlement prior to filing suit." <u>Scott v. BK Beasts LLC</u>, No. 17 CV 699, 2018 WL 2088280, at *1 (E.D.N.Y. May 3, 2018); <u>see also</u> <u>Young Min Lee v. New Kang Suh Inc.</u>, No. 17 CV 9502, 2019 WL 689085, at *2 (S.D.N.Y. Feb. 15, 2019) (noting that although the Second Circuit "has not yet ruled on whether settlement agreements for FLSA-related claims entered into prior to litigation require district court . . . approval," pre-litigation agreements should be assessed "on a case-by-case basis") (citing <u>Gaughan v. Rubenstein</u>, 261 F.

Supp. 3d at 400).  In Young Min Lee, the court reviewed a pre-litigation settlement, holding that it was enforceable after noting that there was no evidence "impugn[ing] the validity of the Agreement and no allegations in the Complaint suggesting that the Agreement was the result of one-sided bargaining."  Young Min Lee v. New Kang Suh Inc., 2019 WL 689085, at *2; see also Gaughan v. Rubenstein, 261 F. Supp. 3d at 402 (reviewing pre-litigation settlement and noting that there was "no reason to view that agreement as the product of one-sided bargaining" and there was "procedural and substantive indicia of fairness present").

In this case, not only had litigation been filed before the Agreement was reached, but defendant and counsel clearly had notice of the lawsuit and the Complaint on December 8, 2020, the date the Agreement was signed.  (Pl.'s 6/14/21 Ltr. at 1).  Mr. Hassan points to the fact that Mr. Rosen contacted him on December 4, 2020 to discuss "this case."  (Id.)  Indeed, Mr. Rosen acknowledges that his client informed him on December 4 that plaintiff had a lawyer and that he reached out to Mr. Hassan to discuss the case.  (See Tr. at 8-9).  Mr. Hassan also notes that Mr. Rosen contacted him again on December 7, 2020, forwarding the unsigned Agreement.  (Hassan Dec. ¶¶ 10-13).  Mr. Rosen does not dispute these contacts with Mr. Hassan.  Additionally, the Agreement makes explicit reference to this case, stating "You and Defendant are now presently parties to a lawsuit now pending before the U.S. District Court for the Eastern District of New York, Case No. 20-cv-5779 (KAM)(CLP)."  (Sett. Agr. ¶ 1).

Apart from the fact that the settlement here was reached after the litigation had begun, there are additional allegations that the Agreement was reached through one-sided bargaining, employer overreach, and potential collusion that would warrant review by the Court prior to approval.  (See Pl.'s 7/6/21 Ltr. at 6-11).

## C. The Requirements of <u>Cheeks</u>

### 1. Legal Standard

In <u>Brooklyn Savings Bank v. O'Neil</u>, the Supreme Court described the FLSA's primary purpose:  "to protect certain groups of the population from substandard wages and excessive hours" as a result of "unequal bargaining power as between employer and employee."  324 U.S. 697, 706-07 (1945); <u>see also</u> <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d at 207 (describing the FLSA's goal of "prevent[ing] abuses by unscrupulous employers, and remedy[ing] the disparate bargaining power between employers and employees").  Long before the Second Circuit in <u>Cheeks</u> considered whether parties in an FLSA action could enter into a private stipulation of dismissal under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, <u>see</u> <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d at 206, the Eleventh Circuit in <u>Lynn's Food Stores, Inc. v. United States Department of Labor</u> held that "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate."  679 F.2d 1350, 1351 (11th Cir. 1982).  In further explaining why "the FLSA is distinct from all other employment statutes," this Court stated:

> Low wage employees, even when represented in the context of a pending lawsuit, often face extenuating economic and social circumstances and lack equal bargaining power; therefore, they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly.

<u>Socias v. Vornado Realty L.P.</u>, 297 F.R.D. 38, 40 (E.D.N.Y. 2014).

In <u>Cheeks</u>, the Second Circuit made it clear that "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." 796 F.3d at 206. Citing <u>Socias v. Vornado Realty L.P.</u>, the Second Circuit noted: "judicial approval furthers the purposes of the FLSA, because 'without judicial oversight employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with the Act.'" <u>Id.</u> at 205-06 (alterations omitted) (quoting 297 F.R.D. at 40).

In order to avoid the strictures imposed by the need for court approval, defendants have continued to engage in private settlement arrangements with their employees even after <u>Cheeks</u> made it clear that such arrangements would not be allowed without court review. <u>See, e.g.</u>, <u>Gallardo v. PS Chicken Inc.</u>, 285 F. Supp. 3d 549, 551 (E.D.N.Y. 2018) (denying dismissal without prejudice where parties entered into a settlement without first receiving settlement approval from court); <u>Guarnero-Ruiz v. 36-03 Food, LLC</u>, No. 17 CV 3178, 2017 WL 7049543, at *1-2, 10 (E.D.N.Y. Dec. 11, 2017) (recommending denial of dismissal without prejudice where plaintiff employees in FLSA action were approached by their employer with releases and a settlement agreement but no settlement was approved by the court).[13]

This Court has in fact dealt with numerous instances in which defendant employers have offered, and plaintiff employees have accepted, settlements without the involvement of plaintiff's counsel, and, at times, without the involvement of defendants' counsel either. <u>See, e.g.</u>, <u>Misiewicz v. D'Onofrio Gen. Contractors Corp.</u>, No. 08 CV 4377, 2010 WL 2545439, at *6 (E.D.N.Y. May 17, 2010), <u>report and recommendation adopted</u>, 2010 WL 2545472 (E.D.N.Y.

---

[13] The Court also notes that the Second Circuit recently held that dismissals without prejudice are subject to <u>Cheeks</u> review. <u>See</u> <u>Samake v. Thunder Lube, Inc.</u>, 24 F.4th 804, 807 (2d Cir. 2022). Although that decision was rendered after the conduct at issue in this case occurred, its reasoning is instructive.

June 18, 2010); cf. Dawidowicz v. Black Square Builders Corp., No. 15 CV 7380, 2016 WL 7665417, at *5 (E.D.N.Y. 2016) (citing allegations of an "under the table" deal between plaintiff and defendant), report and recommendation adopted, 2012 WL 74712 (E.D.N.Y. Jan. 6, 2017).

The danger in allowing these settlements to proceed without court oversight is that the employees, without the benefit of counsel, approach the negotiations from a weaker bargaining position and are more likely to succumb to pressure from the employer to accept settlements that fail to reflect the full measure of the damages owed.  See, e.g., Nall v. Mal-Motels, Inc., 723 F.3d 1304, 1306 (11th Cir. 2013) (where the employee testified she felt pressured to accept employer's out-of-court settlement offer because "she was homeless at the time and needed money" (internal quotation marks omitted)); Guarnero-Ruiz v. 36-03 Food, LLC, 2017 WL 7049543, at *10 (where plaintiff "bargained away a potential $60,000 claim for $4,000"); Walker v. Vital Recovery Servs., Inc., 300 F.R.D. 599, 600 n.4 (N.D. Ga. 2014) (where "twenty-two plaintiffs accepted the offers of judgment—many for $100—because they are unemployed and desperate for any money they can find" (internal quotation marks omitted)).

In some instances, where employees are still employed, employers use threats of job loss to encourage employees to drop their claims or offer to resolve wage and hour disputes by agreeing to continue the employee's employment but at wages less than those required by law. See Lynn's Food Stores, Inc. v. United States Dep't of Labor, 679 F.2d at 1354 (describing situation where employer offered employees $1,000 checks despite Department of Labor determination that employees were owed more than $10,000 and employer stated that "only malcontents" refused the checks); Saravia v. Royal Guard Fence Co., 2020 WL 5231696, at *7 (noting that employee was convinced to sign a settlement agreement in exchange for $4,000 and a promise to "possibly" get his job back); Alvarez v. 894 Pizza Corp., No. 14 CV 6011, 2016

13

WL 4536574, at *6 (E.D.N.Y. Aug. 2, 2016) (describing situation where employer told FLSA plaintiff that he could not keep his job if he continued the lawsuit), report and recommendation adopted, 2016 WL 4540817 (E.D.N.Y. Aug. 30, 2016); Socias v. Vornado Realty L.P., 297 F.R.D. at 41 (noting that such settlements are "ultimately cheaper to the employer than compliance with the Act"); cf. Misiewicz v. D'Onofrio Gen. Contractors Corp., 2010 WL 2545439, at *1 (noting that plaintiff sought to settle for three years of guaranteed employment absent counsel).

One obvious benefit to a private settlement with an employee is that some defendants believe they can avoid the added expense of paying counsel fees, which the employee may agree to forgo in exchange for a larger recovery to the employee.  See Santos v. ET&K Foods, Inc., No. 16 CV 7107, 2019 WL 2435857, at *2 (E.D.N.Y. Feb. 26, 2019) (describing situation where plaintiff settled for more than $20,000 and plaintiff's counsel alleged that the "backdoor settlement agreement" was used to avoid attorney's fees), report and recommendation adopted, Electronic Order, March 31, 2019.  As the court in Socias noted, however, "although employees, through counsel, often voluntarily consent to dismissal of FLSA claims and, in some instances, are resistant to judicial review of settlement," judicial approval furthers the purposes of the FLSA and serves to protect the employees.  297 F.R.D at 40.

When claims of such conduct on the part of employers are brought to the attention of the courts, some courts have declared the settlement void and unenforceable.  See, e.g., Cheeks v. Freeport Pancake House, Inc., 796 F.3d at 206; Nall v. Mal-Motels, Inc., 723 F.3d at 1306; Guarnero-Ruiz v. 36-03 Food, LLC, 2017 WL 7049543, at *6.  Some courts have held hearings to evaluate the credibility of competing claims when there are concerns that coercion or undue influence was involved in reaching a settlement.  See, e.g., Misiewicz v. D'Onofrio Gen.

Contractors Corp., 2010 WL 2545439, at *6; see also Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at *7; Santos v. ET&K Foods, Inc., 2019 WL 2435857, at *3.  When appropriate, courts have imposed sanctions upon the attorneys or on the defendant employers. Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at *6-8 (requiring employer to pay attorney's fees as a sanction under the inherent power of the court); cf. Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at *10 (imposing sanctions under Fed. R. Civ. P. 11 for misrepresentations to the court during hearing regarding settlement).  But see Misiewicz v. D'Onofrio Gen. Contractors Corp., 2010 WL 2545439, at *6 (declining to impose sanctions).

2.   Analysis

In the instant case, it is alleged that plaintiff and defendant entered into an Agreement by which plaintiff would be paid $4,000 in exchange for signing a stipulation of dismissal with prejudice.  (See Sett. Agr. ¶ 2; ECF No. 11-1).  Further, it is alleged that even after this Court began its inquiry into the alleged Cheeks violation, the parties agreed, without the benefit of counsel, that plaintiff would be given a raise and $12,200.  (See Pl.'s Sett. Ltr.).  The purported settlement and its supplementation were clearly obtained in violation of Cheeks.  Defendant attempted to effectuate a settlement that resulted in dismissal with prejudice of an FLSA case absent court approval.[14]

Defendant and counsel argue that the Agreement was reached before they had notice of the action, but the Court questions that argument in light of the stipulation of dismissal (see ECF No. 11-1), defense counsel's various communications to plaintiff's counsel (see Hassan Aff. ¶¶

---

[14] Regardless of whether the dismissal was with or without prejudice, this Court would be required to conduct a fairness hearing under Cheeks.  See Gallardo v. PS Chicken Inc., 285 F. Supp. 3d at 551 (holding that the Cheeks requirement extends to dismissals without prejudice); see also Samake v. Thunder Lube, Inc., 24 F.4th 804, 807 (2d Cir. 2022) (holding that Cheeks requirement extends to dismissals without prejudice, but decided after the dispute in this case was raised).

7-10), and the fact that the Agreement specifically references this action.  (See Sett. Agr. ¶ 1).

Further, even if defendant and counsel had no notice of the action when the Agreement was

reached, they were clearly on notice of this Court's concern with their actions when defendant

made a supplemental offer to plaintiff on June 6, 2021 as outlined in plaintiff's Settlement Letter.

(See Pl.'s Sett. Ltr.).[15]  Additionally, defense counsel's various arguments that plaintiff prefers to

dismiss the action and accept the settlement are untenable in light of the case law:  Cheeks is to

be applied "even to those who would decline its protections."  Socias v. Vornado Realty L.P.,

297 F.R.D. at 41.

Having considered the circumstances underlying the current dispute, the Court

respectfully recommends that the settlement be declared null and void.  Apart from the

circumstances leading to the Agreement, the Agreement itself contains impermissible clauses[16]

such that, had the Agreement been presented to this Court, it would have been rejected in any

event.

---

[15] Regardless, of whether defense counsel was aware of the settlement when it initially occurred, at least one court has refused to dismiss a case in which the parties reached a settlement absent counsel for either party.  See Guarnero-Ruiz v. 36-03 Food, LLC, 2017 WL 7049543, at *1.

[16] The Court refers specifically to the non-disparagement clause that lacks a carveout for truthful statements (Sett. Agr. ¶ 9), which has been uniformly rejected by courts in this circuit.  See, e.g., Ramos Pelico v. PGNV, LLC, No. 18 CV 9761, 2019 WL 2710176, at *3 (S.D.N.Y. June 28, 2019); Gallardo v. PS Chicken Inc., No. 17 CV 3702, 2018 WL 1251980, at *2 (E.D.N.Y. Mar. 8, 2018); Lazaro-Garcia v. Sengupta Food Services, No. 15 CV 4259, 2015 WL 9162701, at *3 (S.D.N.Y. Dec. 15, 2015).  The Agreement also appears to contain a general release, releasing defendants from "any claims that were brought or could have been brought by Plaintiff against Defendant in the Litigation, including, but not limited to" plaintiff's wage and hour claims, a release which has previously been found impermissible under Cheeks.  (Sett. Agr. ¶ 4); Grullon v. Justin Pharmacy Inc., No. 20 CV 6122, 2021 WL 76386, at *2 (S.D.N.Y. Jan. 8, 2021); Gonzales v. Lovin Oven Catering of Suffolk, Inc., No. 14 CV 2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (holding that a settlement agreement containing a general release violated the FLSA).

### D.  Whether Defendant's Counsel Engaged in Sanctionable[17] Behavior

Plaintiff's counsel argues that, in addition to rejecting the settlement, this Court should "impose an appropriate monetary sanction on the defense in light of the delays and wasting of time that [] has occurred and in order to deter the defense and others from engaging in similar conduct[] in the future."  (Pl.'s 6/14/21 Ltr. at 4).  Plaintiff's counsel argues further that sanctions are warranted because defendant's counsel's conduct in this case not only contravenes Rule 4.2(a) of the New York Rules of Professional Conduct, but Mr. Rosen engaged in "frivolous conduct" in arguing that the Agreement represent an Offer of Judgment.  (Id.)

#### 1.  Legal Standard for Sanctions

The Supreme Court has stated that courts have "inherent power" to "discipline [those] who appear before it" including by "impos[ing] monetary sanctions against a litigant (or its counsel) for misconduct."  Chambers v. NASCO, Inc., 501 U.S. 32, 44-46 (1991).  However, this inherent power should only be used to sanction "bad faith, vexatious, or wanton acts."  International Techs. Mktg., Inc. v. Verint Sys., Ltd., 991 F.3d 361, 368 (2d Cir. 2021) (internal quotation marks and alterations omitted) (quoting Chambers v. NASCO, Inc., 501 U.S. at 44).  More specifically, "sanctions are not appropriate unless the challenged actions are (1) entirely without color and (2) motivated by improper purposes. . . ."  Milltext Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 38 (2d Cir. 1995) (internal quotations omitted).  Due process requires notice and opportunity to be heard before imposition of "*any* kind of sanctions."  Saravia v.

---

[17] Magistrate judges have the power to issue sanctions without referral from a district judge.  See Meyer Corp. U.S. v. Alfay Designs, Inc., No. 10 CV 3647, 2017 WL 5515938, at *2 (E.D.N.Y. Mar. 6, 2017) (discussing monetary sanctions as "non-dispositive" and reviewing issuance of sanctions for clear error).  However, this Court recommends sanctions as part of a Report and Recommendation since, should Judge Matsumoto Order the Agreement enforceable, the case would be dismissed.

Royal Guard Fence Co., Inc., 2020 WL 5231696, at *5 (quotations and citations omitted).[18]

As set forth above, Cheeks violations can also serve as a basis for sanctions if the court finds bad faith.  See Saravia v. Royal Guard Fence Co., Inc., 2020 WL 5231696, at *7; Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at *6-8.  Additionally, "[a]lthough disciplinary rules and rules of professional responsibility are not statutorily mandated, federal courts enforce professional responsibility standards pursuant to their general supervisory authority over members of the bar."  SEC v. Lines, 669 F. Supp. 2d 460, 463 (S.D.N.Y. 2009) (quoting United States v. Hammad, 858 F.2d 834, 837 (2d Cir. 1988)).  It "is well established that courts have an obligation, if they become aware of an ethical breach, to report the attorney who committed the ethical breach or fashion an alternative sanction."  People v. Perez, 37 Misc. 3d 272, 293, 946 N.Y.S.2d 835, 850 (N.Y. Sup. Ct. 2012).  Lastly, misrepresentations of the law and facts are grounds for sanctions.  Safeco Ins. Co. of Am. v. M.E.S., Inc., No. 09 CV 03312, 2014 WL 12833779, at *4 (E.D.N.Y. Mar. 25, 2014) (citing Nunez v. Bistro New York Dev. Inc., No. 13 CV 0426, 2013 WL 5495550, at *4 (S.D.N.Y. Oct. 3, 2013)); see N.Y. Comp. Codes R. & Regs. tit. 22, § 130-1.1(c)(3) (noting conduct is "frivolous" if "it asserts material factual statements that are false" and providing for sanctions).

### 2.  Counsel's Argument Regarding Rule 68 Was Frivolous

As set forth above, Rule 68 clearly does not apply to this case—defendant's counsel did not follow any of the steps required by Rule 68.  Further, the stipulation of dismissal states that

---

[18] The Court finds that defendant's counsel, and defendant through counsel, have been afforded due process because they were on notice of, and had the chance to respond to, the potential for sanctions. There has been extensive motion practice regarding the Cheeks violation, and they had an opportunity to respond to plaintiff's counsel's request for sanctions in their reply.  (See Pl.'s 6/14/21 Ltr. (filed June 14, 2021); Rosen Decl. (filed July 20, 2021)).  Alvarez v. 894 Pizza Corp., 2016 WL 4536574, at *7 (noting that "[i]n the context of sanctions, 'the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard'" (quoting Schlaifer Nance & Co., Inc. v. Estate of Warhol, 194 F.3d 323, 335 (2d Cir. 1999))).

the action "is voluntarily dismissed, with prejudice" pursuant to Rule 41(a)(1)(A)(i).  (See ECF No. 11-1).  Yet, throughout this action, counsel has represented both that this case should be considered a Rule 68 Offer of Judgment and that the dismissal would have been without prejudice.  (See Def.'s 5/20/21 Ltr at 2; Rosen Decl. ¶ 7, 16).  Indeed, counsel at different points attached a stipulation of dismissal with and without prejudice in his filings.  (Compare ECF No. 15 at 10 (including dismissal with prejudice, dated Dec. 7, 2020) with Rosen Decl., Ex. 1 (including dismissal without prejudice, undated)).  Thus, this sort of misrepresentation in and of itself is a ground for sanctions.

      3.   Defendant's Counsel, Mr. Rosen, Violated Rule 4.2(a)

In New York, federal district courts are guided by the ABA Model Rules of Professional Conduct, the ABA Model Code of Professional Responsibility, and the New York Rules of Professional Conduct.[19]  See Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 275 (S.D.N.Y. 2004) (noting the various sources of law courts consider in disciplinary proceedings); see also Berkson v. Gogo LLC, 97 F. Supp. 3d 359, 410 (E.D.N.Y. 2015) (noting that the "New York State Rules of Professional Conduct apply" in the Eastern District of New York).  Rule 4.2(a) provides that:

> In representing a client, a lawyer shall not communicate or cause another to communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the prior consent of the other lawyer or is authorized to do so by law.

---

[19] The disciplinary rules in New York have changed several times throughout the years, with the most recent version promulgated in 2009.  See United States v. Walker, No. 18 CR 087, 2019 WL 1876873, at *4 (E.D.N.Y. Apr. 26, 2019) (setting out the history of Rule 4.2(a) in particular).  However, Rule 4.2(a) has remained largely the same over time, so this Court has cited several cases that predate the most recent promulgation of the Rule.

N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0 (emphasis added); N.Y. Rules of Pro. Conduct r. 4.2(a). Although the lawyer must have actual knowledge that the other party is represented, "such knowledge may be inferred from the circumstances." N.Y. Rules of Pro. Conduct r. 4.2(a) cmt. 10. "Thus, the lawyer cannot evade the requirement of obtaining the consent of counsel by ignoring the obvious." Id. When advising a client regarding such communications, a "lawyer may properly advise a client to communicate directly with a represented party," but may not advise the client to "encourage or invite the represented person to take actions without the advice of counsel," id. cmt. 11, and the lawyer must notify opposing counsel before those communications take place. Id. (stating comment 11 is subject to Rule 4.2(b), which requires "reasonable advance notification"). Additionally, Rule 4.2(a) "applies even though the represented person initiates or consents to the communication." SEC v. Lines, 669 F. Supp. 2d at 463 (citing id. cmt. 3). Further, "[a] lawyer is not permitted to ignore the plain words of the rule and then escape responsibility for violating it because no harm was caused, or because counsel for the party receiving the communication was [later] alerted that it had been made." In re Conduct of Hedrick, 822 P.2d 1187, 1191 (Or. 1991) (describing application of no-contact disciplinary rule similar to that of New York).

Here, defendant's counsel first appears to argue that any communications with plaintiff occurred before initiation of the suit. (See Tr. at 9). However, the case law is well-established that "a lawsuit does not have to be filed before DR 7-1049A)(1), [which is the precursor to Rule 4.2], applies; if that were the case, then the rule would apply only to lawsuits." Schmidt v. State, 181 Misc. 2d 499, 504, 695 N.Y.S.2d 225, 229 (N.Y. Ct. Cl. 1999), aff'd, 279 A.D.2d 62, 722 N.Y.S.2d 623 (4th Dep't 2000); see also United States v. Guerrerio, 675 F. Supp. 1430, 1438 n.15 (S.D.N.Y. 1987); Meachum v. Outdoor World Corp., 171 Misc. 2d 354, 363, 654 N.Y.S.2d

240, 247-48 (N.Y. Sup. Ct. 1996).  It is also clear that defendant's counsel knew plaintiff was represented by Mr. Hassan; he states that he emailed Mr. Hassan on December 4, 2020 "to discuss this case," that he "look[ed] [him] up on Pacer" and read the Complaint before he emailed him.  (See Tr. at 8-9).  He further states, "Mr. Shuler had a lawyer" and notes that he "sent it to Mr. Shuler's lawyer," referring to the Agreement.  (Tr. at 10).

Counsel next argues that he "never spoke to Mr. Hassan's client . . . because he was represented."  (Tr. at 17).  However, at the very least it appears that defense counsel "cause[d]" his client to communicate with plaintiff when he knew him to be represented by another lawyer without notice to plaintiff's attorney.  N.Y. Rules of Pro. Conduct r. 4.2(a).  There is little case law addressing what conduct constitutes counsel "caus[ing]" a client to communicate with an adverse party.  See Holdren v. Gen. Motors Corp., 13 F. Supp. 2d 1192, 1195 (D. Kan. 1998) (noting the "dearth of authority").  In Holdren v. General Motors Corp., the court found that counsel "cause[d]" the contact because counsel "had more than mere knowledge of his client's contacts" with adverse parties and the lawyer, among other things, advised his client how to draft an affidavit.  Id.  On the other hand, in Miano v. AC&R Advertising, Inc., the court concluded that counsel did not "cause" the contact where the client recorded conversations with adverse parties, because the court found that the attorney did not "engineer or arrange" the meetings or recordings.  148 F.R.D. 68, 88 (S.D.N.Y. 1993), memorandum opinion adopted, 834 F. Supp. 632 (S.D.N.Y. 1993).

Counsel's conduct in this case is more closely analogous to the circumstances in Holdren than in Miano, and in some ways is more egregious than the conduct in Holdren.  Here, Mr. Rosen actually drafted the Agreement with knowledge of the facts of the *pending litigation* and knowledge of his client's negotiations with a represented party.  (See Sett. Agr. ¶ 1; Tr. at 8-10).

Indeed, the Agreement cited the docket number and caption of the present action.  (Sett. Agr. ¶ 1).  Thus, by providing the Agreement to defendant, Mr. Rosen aided in his client's efforts to negotiate an out-of-court settlement with that represented party, and in effect "engineer[ed]" at least one of the exchanges between the parties, as there would be no other reason to prepare a settlement agreement other than to present it to one's adversary.  Additionally, Mr. Rosen's conduct goes farther than the attorney in <u>Holdren</u> who informed his client how to create an affidavit; here, rather than instructing the defendants as to how to create a settlement agreement, Mr. Rosen specifically drafted the document in what was intended to be a legally binding instrument.  Without the Agreement, defendant's efforts to settle the case with the plaintiff would not have succeeded.  What makes the conduct here even more egregious is that counsel was well aware of the requirement that an FLSA settlement required court approval under <u>Cheeks,</u> and rather than advising his client of that, counsel assisted his client in obtaining a settlement without any intention to present it to the court for approval.

Finally, there is no dispute that plaintiff's counsel was not informed of the communication in advance.  Although Mr. Rosen attempts to argue that Mr. Hassan should have responded to his emails, there was very little time between Mr. Rosen's first effort to contact Mr. Hassan on Friday, December 4, 2020, and the transmission of the Agreement to Rosen's client, only three days later on Monday, December 7, 2020.  Indeed, the Agreement  was then signed on December 8, 2020.  (Rosen Decl. ¶ 23).  Mr. Rosen cannot avoid any ethical obligations by contacting counsel and then waiting just a few days – including a weekend – before sending what is intended to be a binding legal document to his client so that the client may then contact the represented party.  Further, there is nothing in Rule 4.2 that excuses counsel's contact with a party whom he knows is represented by counsel just because the party's counsel did not respond

to communications.  As to Mr. Rosen's argument that Mr. Hassan ignored plaintiff's desire to resolve the action and engage in settlement, Rule 4.2(a) "applies even though the represented person initiates or consents to the communication."  S.E.C. v. Lines, 669 F. Supp. 2d at 463 (quoting Rule 4.2(a) cmt. 3).

Mr. Rosen was not only aware that plaintiff was represented by counsel and caused his own client's further contact with plaintiff by providing the client with a fully drafted legal agreement, but he failed to contact counsel before sending the Agreement to the parties to be signed.  This Court, therefore, respectfully recommends a finding that Mr. Rosen violated Rule 4.2(a).

### 4.  Defendants' Cheeks Violation is Sanctionable[20]

Defendant and counsel clearly violated Cheeks, as set forth supra.  To impose sanctions for a Cheeks violation, this Court must find that defendant and counsel acted in bad faith; the Court must find both "clear evidence that the challenged actions are entirely without color and are taken for reasons of . . . improper purposes" based on specific factual findings.  Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc., 297 F. Supp. 3d 451, 471 (S.D.N.Y. 2018) (citing Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d at 39-40).

In Saravia v. Royal Guard Fence Co., Inc., the court found that two individuals had attempted to "manipulate [the plaintiff] into firing his lawyer and dropping his lawsuit."  2020

---

[20] This Court further notes that "[b]oth the FLSA and the NYLL provide for a mandatory award of reasonable attorneys' fees and costs to a prevailing plaintiff," including where a plaintiff settles the action.  Garcia v. SBKU Servs. Inc., No. 17 CV 3130, 2021 WL 1394480, at *1 (E.D.N.Y. Feb. 25, 2021), report and recommendation adopted as modified, 2021 WL 1186321 (E.D.N.Y. Mar. 30, 2021).  Additionally, Section 475 of New York's Judiciary Law provides for a lien that attaches to "a verdict, report, determination, decision, award, [or] settlement" in favor of an attorney that appears on behalf of a party.  N.Y. Jud. Law § 475 (emphasis added).  Although this Court respectfully recommends a finding that the "settlement" is null and void per the analysis supra, plaintiff's counsel would be entitled to fees if the settlement was approved and found to be fair under the Cheeks analysis.

WL 5231696, at *7.  In Alvarez v. 894 Pizza Corp., the court found that the defendant "required plaintiff to choose between continuing his employment and maintaining his lawsuit."  2016 WL 4536574, at *6.  This case is no different from Saravia and Alvarez, because, here, defendant claims to have paid plaintiff $4,000 in exchange for plaintiff's agreement to dismiss the case, despite the fact that plaintiff's claims in the action likely exceeded that amount.  (See Sett. Agr.).  Indeed, the conduct in this case may be even more egregious than that found in Alvarez, where the plaintiff filed a letter stating he "ha[d] no problems and ha[s] been fully paid all the money that has ever been owed to me."  2016 WL 4536574, at *2.

Here, the parties attempted to effectuate a supplement to the Agreement to ensure the litigation was discontinued because plaintiff did not want to risk "jeopardize[ing] [his] employment" with defendant.  (Pl.'s Sett. Ltr.).  Although defendant appears to have paid plaintiff the initial $4,000, there is no indication that plaintiff ever received the supplemental funds, nor is there evidence of the amount of the raise that he was promised.  (Id.)  Even where the plaintiff filed the aforementioned letter in Alvarez, the court found "no indication that [plaintiff] achieved any of the benefits sought by bringing" the suit.  2016 WL 4536574, at *3.  Like the court in Alvarez, this Court is similarly unable to find that plaintiff achieved the benefits of his lawsuit.

Additionally, the supplement was executed even after this Court had expressed concern about the Agreement itself.  Defendant's conduct here presents the very concerns that prompted the Cheeks requirement of court review, particularly because plaintiff continued working for defendant throughout the case and was clearly motivated to keep his job when he agreed to the supplemental settlement amount and raise.[21]  (See Pl.'s Sett. Ltr.); Alvarez v. 894 Pizza Corp.,

---

[21] Even if Mr. Rosen's statement that plaintiff would prefer to dismiss the case is true, the case law is clear that court approval is still necessary, as this Court has noted.  Further, whether or not plaintiff

2016 WL 4536574, at *5 (noting that "employees who fear economic retaliation may be inclined to accept violations of their rights rather than enforce them and risk forfeiting their income"); see Guajardo v. Titan Constr. Servs. LLC, No. 19 CV 1551, 2020 WL 1922642, at *2 (S.D.N.Y. Apr. 21, 2020) (considering that plaintiffs "ceased employment with Defendants prior to the start of this litigation, diminishing potential concern that Plaintiffs may have been coerced into the settlement by their employer").

As to Mr. Rosen, the conduct that violated Rule 4.2(a) suggests that he not only knew he was aiding the client to achieve a settlement without the knowledge of plaintiff's counsel and without obtaining Cheeks review, but he was acting in bad faith. The assertion that Mr. Rosen had no knowledge of the settlement because he "never saw the document" after he sent it to his client, and the parties signed the agreement "without [his] knowledge" is belied by the events as set forth by Mr. Rosen and the documents themselves. (Tr. at 9-10). In fact, Mr. Rosen was aware of the exact case that defendant was referring to, as well as the substance of the negotiations with the plaintiff, because counsel discussed the Agreement with his client such that he was able to draft a purportedly legally binding document setting forth the terms. Indeed, the Agreement refers specifically to the case at hand, "Case No. 20-cv-5779." (Sett. Agr. ¶ 1). Additionally, the fact that Mr. Rosen decided to send the unsigned Agreement to his client fewer than three days after his first attempted contact with Mr. Hassan indicates at least some degree of intentionality. Further, violations of Rule 4.2 are particularly concerning in light of Cheeks' purpose—to "prevent abuses by unscrupulous employers, and remedy the disparate bargaining

---

initiated the settlement discussions does not change this Court's ability to issue sanctions. See Saravia v. Royal Guard Fence Co., 2020 WL 5231696, at *2, 7 (imposing sanctions when conflicting statements about who initiated settlement discussions).

power between employers and employees." Cheeks v. Freeport Pancake House, Inc., 796 F.3d at
207.

In Misiewicz v. D'Onofrio Gen. Contractors Corp., this Court declined to issue sanctions
when the defense attorney "advised his client to get a release of claims" after the client reached a
settlement, based on the Court's finding that the attorney did not "participate in negotiating the
terms of the final settlement." 2010 WL 2545439, at *6. However, the violation in this case is
much more problematic. Here, defense counsel not only prepared the final Agreement which
clearly referenced the case at issue and stated that plaintiff has "consulted with an attorney
before signing below" but he also prepared a stipulated dismissal with prejudice, all while
representing to this Court that the stipulation was without prejudice. (Sett. Agr. ¶ 18; ECF No.
11-1). Again, because Mr. Rosen was well aware of the requirements for FLSA settlements as
well as the rules of professional conduct, such failure was clearly taken for the "improper
purpose" of either (1) attempting to avoid court approval as required by Cheeks or (2) ignoring
the fact that the client was attempting to avoid these requirements.

Defendant clearly violated Cheeks when it entered into this purported "settlement"
without first obtaining court approval, and it did so with the assistance of counsel who drafted
the Agreement that memorialized the settlement although counsel was aware plaintiff was
represented. Such active avoidance of responsibility is what Cheeks sought to prevent.
Allowing this type of conduct to continue without some sanction would "permit defendants to
circumvent the FLSA's 'deterrent effect' and eviscerate FLSA protections." Armenta v. Dirty
Bird Grp., LLC, No. 13 CV 4603, 2014 WL 3344287, at *4 (S.D.N.Y. June 27, 2014). As such,
the Court respectfully recommends that defendant and defendant's counsel[22] be required to pay

---

[22] Defendant and defendant's counsel should be held jointly and severally liable for the sanctions
in this case. See Rabin v. Dow Jones & Co., Inc., 665 F. App'x 21, 23 (2d Cir. 2016) (upholding joint

plaintiff's counsel's fees in connection with the instant motion, with the amount to be determined by a later accounting as a sanction for defendant's conduct in attempting to settle this case in contravention of <u>Cheeks</u>.

<u>CONCLUSION</u>

The Court respectfully recommends that the settlement be declared null and void and that plaintiff's attorney be awarded the fees incurred in preparing the instant motion.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; <u>Caidor v. Onondaga Cty.</u>, 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**


Dated: April 4, 2022
      Brooklyn, New York


                                 *Cheryl L. Pollak*
                                 CHERYL L. POLLAK
                                 United States Magistrate Judge
                                 Eastern District of New York

---

and several liability for sanctions against party and counsel under inherent power when court found bad faith); <u>Sterling Promotional Corp. v. General Acc. Ins. Co. of New York</u>, 86 F. App'x 441, 445 (2d Cir. 2004) (holding defendants and defense counsel jointly and severally liable where "court had made it clear to [counsel] that it considered [counsel], and not merely [the party], at fault").